# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

TONEY DERON DAVIS,

    Petitioner,

v.                                                  Case No. 3:14-cv-1200-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT
OF CORRECTIONS, et al.,

    Respondents.
_____

## ORDER

Petitioner, a death row inmate, initiated this action on October 2, 2014, by filing a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. See Doc 1. Since then, this case has been delayed by matters pending in state court and the Court's own congested prisoner docket. In June 2020, the Court appointed the Capital Habeas Unit for the Northern District of Florida (CHU-North) as Petitioner's sole federal habeas counsel. See Doc. 60. A review of Petitioner's state court docket shows Rick Sichta, Esquire, is representing Petitioner in state court.[1] See State v. Davis, No. 16-1992-CF-13193 (Fla. 4th

---

[1] Prior to June 2020, Mr. Sichta and CHU-North were both representing Petitioner in these federal habeas proceedings. See Docs. 26, 49.

Cir. Ct.).[2] Petitioner is proceeding on a Third Amended Petition. See Doc. 68. Respondents have responded, see Doc. 73, and Petitioner has replied, see Doc. 80.

Before the Court is "Petitioner's Motion to Stay Federal Habeas Corpus Proceedings Pending Exhaustion of State Remedies," filed on July 19, 2023. See Doc. 87. Petitioner asserts that he has received newly discovered evidence of the victim, C.C.'s, cause of death. Id. at 1-3. Petitioner states that on July 21, 2022, his expert, Dr. Jonathan Arden, finally obtained and reviewed the slides from C.C.'s autopsy. Id. at 2. And on November 22, 2022, "Dr. Arden provided [Petitioner] with a supplemental report concluding that C.C. suffered from pneumonia prior to entering the hospital where she was ultimately pronounced deceased"; and according to Dr. Arden, "[t]he pneumonia, not any action of [Petitioner] caused C.C.'s death." Id. at 3. Petitioner argues the state did not disclose evidence of these autopsy slides to Petitioner's trial counsel or initial postconviction counsel. Id. at 3. Considering this new evidence, on July 12, 2023, Petitioner, with help from Mr. Sichta, filed with the state court a successive Florida Rule of Criminal Procedure 3.851 motion containing two

---

[2] The Court takes judicial notice of Petitioner's state court docket. See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) ("[D]ocket sheets are public records of which the court could take judicial notice.").

claims – (1) a Brady[3] claim premised on the state's failure to "disclose the slides despite the fact that they undermine the [s]tate's evidence at trial that C.C.'s death was caused by a head injury and the [s]tate's theory that [Petitioner] caused the head injury by multiple blows to C.C.'s head"; and (2) a claim that "the newly discovered evidence is sufficient to have probably produced an acquittal of first-degree murder." Id. at 3-4. Petitioner asks that the Court stay this action to allow the state court to consider his recently filed Rule 3.851 motion and then permit him to return to federal court once the state court has resolved the pending issues. Id. at 5. In support of his Motion, Petitioner attaches a copy of his July 2023 successive Rule 3.851 motion filed in state court, see Doc. 87-1 at 1-25, and Dr. Arden's November 2022 expert report, see id. at 26-29.

Respondents have filed a response opposing the request to stay. See Doc. 89. They argue that Petitioner has not satisfied the requirements justifying a stay under Rhines v. Weber, 544 U.S. 269 (2005), or Mayle v. Felix, 545 U.S. 644 (2005). Doc. 89 at 1-2. According to Respondents, Petitioner fails to demonstrate how his new Brady claim pending in state court "relates back" to a timely claim in his Third Amended Petition, and his claim of actual innocence is not cognizable in federal habeas proceedings. Id. at 2. Respondents also argue

---

[3] Brady v. Maryland, 373 U.S. 83 (1963).

3

the autopsy slides were available to trial counsel and postconviction counsel, and thus Petitioner fails to show good cause as to why he waited so long to have the slides examined. Id. at 6-7. They argue that both claims based on this new evidence are "plainly meritless," and Petitioner's request for a stay reflects his abusive litigation and intentional delay tactics. Id. at 7-11. They also argue Petitioner's new claims are "actually unauthorized successive habeas claims" and the Court would lack jurisdiction to legally consider the issues if Petitioner is permitted to raise them in this action. Id. at 16-19.

In reply, Petitioner argues he is not engaging in impermissible dilatory tactics because during trial, "the state failed to accurately describe the examination of the microscopic slides obtained during the autopsy, including not identifying slides that were created"; and during postconviction proceedings, the state "erected financial obstacles and difficulties" to hinder Petitioner's access to the slides. Doc. 92 at 1. Petitioner contends he has been trying to obtain access to the slides since 2018 and the discovery requests he filed in this case belie Respondents' argument that Petitioner has failed to act diligently. Id. at 2. He also argues that Respondents' "cognizability" argument is misplaced because his claims of newly discovered evidence and actual innocence are cognizable in state court where the claims are pending. Id. at 3-4. He likewise asserts that evidence establishing a different cause of death could

4

be meritorious; and according to Petitioner, the state court should be permitted to consider these claims and determine their viability before this Court makes substantive findings on the merits. Id. at 4. Additionally, he contends Respondents overlook that Petitioner's allegations of newly discovered evidence may serve as a gateway to overcome procedural bars in this action. Id. at 5. And Petitioner argues that his two new claims "relate back" to the broad Brady allegations in Claim 2 and the open-ended actual innocence allegations in Claim 7 of his Third Amended Petition. Id. at 5.

"District courts do ordinarily have authority to issue stays, see Landis v. North American Co., 299 U.S. 248, 254 (1936), where such a stay would be a proper exercise of discretion, see Clinton v. Jones, 520 U.S. 681, 706 (1997)." Rhines, 544 U.S. at 276. But the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) changed the landscape of habeas corpus with its "goal of streamlining federal habeas proceedings." Id. at 277. The Supreme Court of the United States has explained:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. Cf. Duncan,[4] supra, at 180 ("[D]iminution of statutory incentives to

---

[4] Duncan v. Walker, 533 U.S. 167 (2001).

5

> proceed first in state court would . . . increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").
>
> For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Id.

Following Rhines, the Eleventh Circuit succinctly outlined the limited circumstances in which a district court may order a stay and abeyance of a mixed petition:

> [T]he district court has discretion to employ a "stay-and-abeyance" procedure, whereby the court would stay the timely filed petition and hold it in abeyance while the petitioner returns to state court to exhaust all of his previously unexhausted claims. Rhines v. Weber, 544 U.S. 269, 275-79 (2005). The Supreme Court explained that such a procedure "should be available only in limited circumstances," and only is appropriate when (1) there was good cause for the petitioner's failure to exhaust his claims first in state court, (2) the unexhausted claims are not plainly meritless, and (3) there is no indication that the

> petitioner engaged in intentionally dilatory litigation tactics. Id. at 277-78.

Claudio v. Sec'y, Fla. Dep't of Corr., 578 F. App'x 797, 799 (11th Cir. 2014)[5]; Thompson v. Sec'y, Dep't of Corr., 425 F.3d 1364, 1365-66 (11th Cir. 2005) (per curiam) (citation omitted); see also King v. Chase, 384 F. App'x 972, 975 (11th Cir. 2010).

Based on a review of Petitioner's Motion and Reply, and after considering the Rhines factors, the Court determines that a stay is warranted. Petitioner has shown "good cause" for failing to exhaust these claims in state court before filing in federal court, and he has established that the issues are "potentially meritorious." Rhines, 544 U.S. at 278. There is also no evidence that Petitioner "engaged in intentionally dilatory litigation tactics." Id. (emphasis added). Although Respondents contend the Court should deny Petitioner's Motion because his two new claims are untimely under Mayle, the Court finds that a determination about the timeliness of these claims is premature at this stage. Indeed, the interests of comity and federalism favor staying these proceedings. See Rhines, 544 U.S. at 273 ("[T]he interests of comity and federalism dictate

---

[5] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36–2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

7

that state courts must have the first opportunity to decide a petitioner's claim."). On July 12, 2023, Petitioner filed a successive Rule 3.851 motion in state court that raises the two new issues Petitioner seeks to add to Claims 2 and 7 of his Third Amended Petition. See Davis, No. 16-1992-CF-13193. The state has asked the state court for an extension of the deadline to respond to Petitioner's successive Rule 3.851, and the state court has not yet ruled on the state's request or the Rule 3.851 motion. Id. The state court's ultimate ruling will likely involve a determination of whether Petitioner presents newly discovered evidence of a Brady violation or whether his allegations of actual innocence warrant a merits consideration. Thus, the Court finds the state court should have an opportunity to address Petitioner's new allegations first, and grants Petitioner's Motion.

Therefore, it is

**ORDERED:**

1. "Petitioner's Motion to Stay Federal Habeas Corpus Proceedings Pending Exhaustion of State Remedies" (Doc. 87) is **GRANTED**, and this case is **STAYED.**

2. The Court directs the Clerk to **ADMINISTRATIVELY CLOSE** this case pending further Order of the Court.

3. **Within THIRTY DAYS** of the state court's ruling on Petitioner's

successive Rule 3.851 motion and any appeal therefrom, Petitioner must move to reopen this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 29th day of August, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7
c:   Counsel of Record

9